**Eduardo Eladio GARCIA-SARQUIZ, Plaintiff,**

v.

**William B. SAXBE, Attorney General of the United States, Defendant.**

**No. 74-297-Civ-WM.**

United States District Court, S. D. Florida.

Nov. 4, 1974.

---

Brian R. Hersh, Miami, Fla., for plaintiff.

Robert W. Rust, U. S. Atty., by C. Wesley G. Currier, Asst. U. S. Atty., Miami, Fla., for defendant.

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND ORDER OF SUMMARY JUDGMENT.

MEHRTENS, District Judge.

This Cause came before the Court upon the Motion of the Defendant for Summary Judgment based upon the facts that have either been stipulated by the parties or uncontroverted during a hearing on this matter.

The Plaintiff was born in Cuba in 1927 and became a citizen of the United States at birth by virtue of his father's status as a naturalized American citizen. In 1932 the Plaintiff came to the United States and remained here with his parents until 1936 at which time he and his family returned to Cuba. On July 24, 1947, the Plaintiff executed an Oath of Renunciation of the Nationality of the United States which resulted in the issuance of a Certificate of the Loss of the Nationality of the United States and the approval thereof by the United States Secretary of State on January 29, 1951.

The Plaintiff returned to the United States in 1960 and was admitted as a non-immigrant for pleasure and had his status readjusted pursuant to the Nationality Act of November 2, 1966 to a permanent resident as of July, 1964. But for a brief stay in Puerto Rico, the Plaintiff has been continuously in the United States since 1960. The matter might have rested here but for the fact that in 1969 the Plaintiff was convicted

of violating the narcotics laws, to wit: dispensing and distributing heroin, which resulted in deportation proceedings being brought pursuant to 8 U.S.C. § 1251(a)(11).

During the course of the deportation hearing, the Plaintiff presented evidence of his father's citizenship and, thus, his own, in defense to the deportation proceeding. The Special Inquiry Officer ruled as a matter of law that the Plaintiff had at one time acquired United States citizenship but that United States citizenship was no longer held by virtue of the Oath of Renunciation. · On January 29, 1970, an Order of Deportation was entered against the Plaintiff and pursuant to which he filed a Notice of Appeal.

The Notice of Appeal, however, was deficient for failure to include the fee or, alternatively, failing to state that he was unable to pay the fee, and the Plaintiff was so notified. This notification was returned to the Immigration and Naturalization Service with a notation on the bottom by the Plaintiff that it was a mistake and that he did not wish to appeal. It was not until four years later that the Plaintiff filed the instant action alleging, in effect, that he should not be deported because the finding of the Special Inquiry Officer that the Plaintiff had renounced his citizenship was error. This is based upon the Plaintiff's present contention that the Oath of Renunciation was obtained under circumstances constituting duress and is thus vitiated, but at no time in the twenty-seven years since has the Plaintiff sought to challenge its vitality.

The Motion for Summary Judgment filed by the Defendant asserts that this Court is without jurisdiction to grant the relief sought by the Plaintiff, to wit: a declaratory judgment that the Plaintiff is a citizen of the United States since, as a matter of law, his renunciation of citizenship twenty-seven years ago is void *ab initio* as having been made involuntarily.

■ For this Court to have jurisdiction over the subject matter and, fur-

ther, jurisdiction to grant the relief requested, it must do so pursuant to a specific grant of Congressional authority; *Dugan v. Rank,* 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); and *a fortiori,* such jurisdiction must be exercised solely in conformity with that grant.

In the exercise of its power, Congress has created two circumstances, with appropriate restrictions, under which claims of nationality, such as are raised by the Plaintiff, may be heard by the Court.

The statutory scheme for adjudication of nationality claims arising under circumstances such as presented in the instant case is found in 8 U.S.C. § 1105a(a)(5) and provides that the appropriate United States Court of Appeals shall determine the nationality claim (unless *transferred* to a United States District Court for an evidentiary hearing). This provision became law in 1961 and since that time the Supreme Court has held that claims arising out of a deportation proceeding are cognizable only in the appropriate Circuit Court of Appeals. *Cheng Fan Kwok v. I. N. S.,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Foti v. I. N. S.,* 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).

The limitations on the right to present such a claim, of course, is also set forth in the statute. The Claim must be tied to a petition for review of the Deportation Order out of which the claim arose, 8 U.S.C. § 1105a(a)(5); and the petitioner must have first exhausted his administrative remedies. 8 U.S.C. § 1105a(c). This Circuit has held that the failure to make a timely appeal from a Deportation Order constitutes a failure to exhaust administrative remedies and forecloses judicial review. *Arias-Alonso v. I. N. S.,* 391 F.2d 400 (5th Cir. 1968).

■ The Plaintiff has alleged that the Deportation Order entered against him did "wrongly adjudge the Plaintiff to be an alien. . . ." To the extent the Plaintiff challenges that Order he is (a) four years too late; 8 U.S.C. § 1105a(a)(1); (b) foreclosed for failure

to exhaust administrative remedies; 8 U.S.C. § 1105a(c); *Arias-Alonso, supra;* and (c) in the wrong court. 8 U.S.C. § 1105a(a)(2); *Cheng Fan Kwok, supra.*

 The other statutory scheme by which a claim of nationality might be adjudicated is found in 8 U.S.C. § 1503. This statute enables a person who has received a final denial of a right or privilege of a national of the United States upon the ground that he is not such a national, to bring an action for declaratory judgment declaring him to be such a national. This provision is not available to persons proceeded against by way of exclusionary proceedings, 8 U.S.C. § 1503(a); nor to those whose claim of nationality arose from an Order of Deportation [8 U.S.C. § 1105a(a)(5) provides that any petitioner for review of an Order of Deportation shall not be entitled to have such issue determined under 8 U.S.C. § 1503(a).].

 The right to bring such a declaratory judgment action is limited by the requirement that the action must be brought within five years of the final denial of the right or privilege as a National of the United States. The Plaintiff has claimed the denial of the most fundamental right or privilege of a National of the United States, to wit: his citizenship. This occurred at the time of the entry of the Certificate of the Loss of the Nationality of the United States on December 11, 1950 not by the entry of a Deportation Order based upon such certificate. See *Linzalone v. Dulles*, 120 F.Supp. 107 (D.C.N.Y.1954).

To the extent the Plaintiff seeks a declaratory judgment pursuant to 8 U.S.C. § 1503(a) and not a review of his Deportation Order, he is nineteen years too late.

Since the Court is without subject matter jurisdiction under either 8 U.S.C. § 1105a or 8 U.S.C. § 1503, the Defendant is entitled to Summary Judgment as a matter of law. Therefore, it is,

Ordered and adjudged that the Motion for Summary Judgment be and the same is granted. It is further ordered and adjudged that Summary Judgment be and the same is entered for the Defendant and against the Plaintiff.