Robert E. WHITEHEAD

v.

Alexander M. HAIG, Jr., Secretary of State, of the United States

Appeal of Robert E. WHITEHEAD.

No. 85–5631.

United States Court of Appeals, Third Circuit.

Argued April 14, 1986.

Decided June 27, 1986.

Rehearing and Rehearing En Banc Denied Aug. 21, 1986.

Sam Bernsen (argued), Fragomen, Del Rey & Bernsen, P.C., Washington, D.C., Shelley Siegal, West Orange, N.J., for appellant.

Thomas W. Greelish, U.S. Atty., Ruth V. Simon (argued), Sp. Asst. U.S. Atty., Newark, N.J., for appellee.

Before SEITZ, HIGGINBOTHAM and BECKER, Circuit Judges.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a final order of the district court dismissing the complaint of appellant Whitehead as time barred. Whitehead brought this action for a declaratory judgment adjudging him to be a national of the United States pursuant to section 360(a) of the Immigration and Nationality Act, 8 U.S.C. § 1503(a) (1982), and the Declaratory Judgments Act, 28 U.S.C. § 2201. For the reasons that follow, we will reverse and remand.

I.

Whitehead was born in Los Angeles, California in 1943, thereby acquiring United States citizenship. He held a valid United States passport continuously between the years 1948–1964 for the stated purposes of travel and education abroad. On March 25, 1965, he surrendered his United States passport for an Irish passport at the Irish Embassy in Rome. Acquisition of Irish

citizenship in this fashion did not repudiate his American citizenship. On April 12, 1965, at the age of 22 years, Whitehead formally renounced his United States citizenship at the United States Embassy in Tokyo. He now alleges that his renunciation was involuntary and, thus, void. The American Embassy in Tokyo forwarded a Certificate of Loss of Nationality, pursuant to 8 U.S.C. § 1501, *see* footnote 2 *infra,* together with other papers related to Whitehead's renunciation, to the Department of State on April 19, 1965, and on April 30, 1965, the Department of State approved the Certificate of Loss of Nationality. In 1968 Whitehead returned to the United States as a visitor carrying his Irish passport. He applied for a change from "non-immigrant" status to that of "student" in that same year. This application was approved through October 17, 1969. In 1970, Whitehead applied for and was granted an "immigrant" visa and on the basis of that visa, his application for "lawful permanent resident status" was granted on April 13, 1970.

Whitehead was convicted of various state and federal crimes during the period 1973 to 1976. After serving time in prison, Whitehead applied for a United States passport. It was denied on March 3, 1980, on the basis that he was not a national of the United States because of his 1965 renunciation. On April 18, 1981, Whitehead filed the complaint in this action in the United States District Court for the Southern District of New York.

In his complaint, Whitehead alleged that, while he had formally renounced his citizenship in Tokyo, upon the basis of which a Certificate of Loss of Nationality was approved by the Department of State, this renunciation was the result of coercion, duress and undue influence and was therefore involuntary and, consequently, his renunciation was invalid and should be vacated. He further alleged that the 1979 denial of his application for a United States passport constituted a final administrative denial of a right or privilege as a citizen of the United States, giving him a cause of action under 8 U.S.C. § 1503(a). *See* footnote 3 *infra.*

On December 29, 1981, the Immigration and Naturalization Service instituted deportation proceedings against Whitehead, alleging as cause, first, that he had not been in possession of a valid immigrant visa at the time of his 1970 entry into the United States, and second, that he had been convicted of crimes involving moral turpitude. These proceedings have been stayed pending the outcome in this case.

The instant case was transferred to the District of New Jersey where the defendant Secretary of State filed an answer alleging that to the extent Whitehead's claim sought to vacate his 1965 renunciation of citizenship, it was time barred by the five-year limitation provision contained in § 1503(a). Defendant then moved to dismiss the complaint, and his motion was granted after oral argument. This appeal followed.

## II.

Whitehead purported to formally renounce his citizenship under the provisions of 8 U.S.C. § 1481(a)(5).[1] Consequently, he was issued a Certificate of Loss of Nationality pursuant to 8 U.S.C. § 1501.[2]

1. This statute provides as follows:
   From and after the effective date of this chapter a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by
   ....
   making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State....

2. This statute provides as follows:

   Whenever a diplomatic or consular officer of the United States has reason to believe that a person while in a foreign state has lost his United States nationality under any provision of Part III of this subchapter, or under any provision of chapter IV of the Nationality Act of 1940, as amended, he shall certify the facts upon which such belief is based to the Department of State, in writing, under regulations prescribed by the Secretary of State. If the report of the diplomatic or consular officer is approved by the Secretary of State, a copy of

The sole issue for resolution by this Court is whether the applicable "final administrative denial" for determining when the five year limitation period contained in 8 U.S.C. § 1503(a)[3] has run is the approval of Whitehead's Certificate of Loss of Nationality in 1965 or the denial of his passport application in 1980.

The Secretary of State contends that when a Certificate of Loss of Nationality is approved by the Secretary, it is a final adjudication that that person is not a citizen of the United States. He further contends that the approval takes away all rights of United States citizenship and is a "final administrative denial" of a claim to United States citizenship, entitling the individual to bring a declaratory judgment action under § 1503(a) for a period of five years therefrom.

The district court agreed with the Secretary's position and based its dismissal of Whitehead's complaint on the finding that his "claim was filed 11 years too late, since what he's seeking to challenge is not the ministerial act of denying him a passport, but his loss of United States citizenship which occurred under the authorities as I read them in 1965. The denial of plaintiff's passport application in 1980 necessarily resulted from the fact that he had lost his citizenship in 1965 and does not revive the right to bring the action under Title 8 of the United States Code, 1503." (App. at 37–38.) In so holding, the court relied on *Linzalone v. Dulles,* 120 F.Supp. 107 (S.D. N.Y.1954) and *Garcia-Sarquiz v. Saxbe,*

407 F.Supp. 789 (S.D.Fla.1974), *aff'd,* 527 F.2d 1389 (5th Cir.1976). We cannot agree with the district court's holding.

*Linzalone* was a case in which a Certificate of Loss of Nationality had been issued to plaintiff, and deportation proceedings had been predicated upon it. To avoid defending his claim to citizenship in the deportation proceeding, plaintiff brought a separate action under 8 U.S.C. § 1503(a) seeking a declaratory judgment that he was a United States citizen. The government moved to dismiss, contending first that the statute required a final administrative denial of a right or privilege claimed by a person as a national of the United States before that person can bring an action under § 1503(a), and second, that there can be no "final administrative denial" without an administrative proceeding. The court disagreed with defendant's second contention and found that where no administrative proceeding was available to plaintiff in the course of issuance of the Certificate of Loss, the administrative denial was final and no administrative proceeding was required in order to commence an action under § 1503(a). The court held that the issuance of the Certificate of Loss of Nationality to the plaintiff there was a "final administrative determination of [his] loss of nationality by the Department of State. It finally denied [him] the right or privilege as a national of the United States to have his status as such recognized and to be free from the obligation of appearing at and defending the deportation proceed-

---

the certificate shall be forwarded to the Attorney General, or his information, and the diplomatic or consular office in which the report was made shall be directed to forward a copy of the certificate to the person to whom it relates.

**3.** This statute provides as follows:

If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of title 28 against the head of such department or independent agency for a judgment declaring him

to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such exclusion proceeding. An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

ing commenced subsequent to that certification of loss of his nationality." 120 F.Supp. at 109. Thus, the court denied the government's motion and entertained plaintiff's cause.

The *Linzalone* court rested its decision on the ground that because no administrative proceeding exists to relieve the party challenging the issuance of the Certificate of Loss, the issuance of the certificate under § 1501 is itself an administrative denial and an action will lie under § 1503(a). We disagree. Section 1501 is not a statute specifying a procedure for the administrative "determination" of a claim of a right or privilege as a national of the United States. The functions required of the various entities are purely ministerial. The language of the statute itself does not speak in terms common to those prescribing administrative procedures. It speaks only in terms directing an automatic transmittal, for informational purposes, of certified facts related to the expatriation of a United States citizen. Legislative history of the section confirms our view that § 1501 was not intended to provide any mechanism for administrative adjudication or determination by the Secretary of State as part of its mandate to approve and issue the Certificate of Loss. In the letter of submittal from the President accompanying the proposed Nationality Laws of the United States dated June 1, 1938, the committee designated by Executive order to revise and codify the nationality laws into a comprehensive law for submission to Congress stated the following:

The provisions of Chapter IV, Loss of Nationality, are of special importance. Loss of nationality is in all cases to result from the existence of stated facts. In this relation mention may be made to the provision of [§ 1501], in which diplomatic and consular officers are required to send to the Department of State reports concerning persons found by them to have committed acts resulting in loss of American nationality under the provisions of Chapter IV of the proposed act. It is important to note that such reports are intended merely for the infor-

mation of the Department of State, the Department of Labor, and any other branches of the Government which may be interested.

Message from the President of the United States, Nationality Laws of the United States, 76th Cong., 1st Sess. vi (Comm. Print 1938). Apparently, the purpose and function of § 1501 is that of governmental record-keeping and notification to the affected person of the existence of such record.

In performing the act of expatriation, Whitehead did not submit to an administrative procedure. While we agree with the *Linzalone* court to the extent it finds that § 1501 makes no provision for administrative proceedings for a party seeking to challenge the issuance of a certificate of loss of nationality, we are hard pressed to see how a "final administrative denial" may result from an automatic issuance of a document which does not involve administrative proceedings. Whitehead requested no benefit which could be denied him under § 1501. He surrendered his citizenship by formal renunciation. It was not taken from him. No adjudication by the government was required nor, indeed, even authorized by § 1501. The act of expatriation by formal renunciation occurs entirely without formal or informal administrative determination as we understand that concept, and therefore we find that the automatic issuance of a Certificate of Loss upon the act of formal renunciation does not constitute a final administrative denial for the purpose of determining when the five-year time limitation contained in § 1503(a) begins to run.

*Garcia-Sarquiz* was a case in which the plaintiff brought an action four years *after* a deportation order was issued against him. Plaintiff challenged the finding of the special inquiry officer in the deportation proceeding that he had voluntarily renounced his citizenship, claiming instead that he had done so under duress. The court disposed of defendant's motion for summary judgment asserting lack of subject matter jurisdiction by finding that plaintiff was barred

from maintaining the action as a direct appeal from the deportation order under 8 U.S.C. § 1105a. The court went on to discuss its jurisdiction pursuant to § 1503(a):

> The right to bring such a declaratory judgment action is limited by the requirement that the action must be brought within five years of the final denial of the right or privilege as a National of the United States. The Plaintiff has claimed the denial of the most fundamental right or privilege of a national of the United States, to wit: his citizenship. This occurred at the time of the entry of the Certificate of the Loss of the Nationality ... not by the entry of a Deportation Order based upon such certificate. [Citing *Linzalone v. Dulles* ].

407 F.Supp. at 792.

Section 1503(a) contains a specific exception that "no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding ... or (2) is in issue in any such exclusion proceeding." Thus, the plaintiff had no cause of action under § 1503(a). Consequently, the discussion engaged in by the *Garcia-Sarquiz* court on the subject of the five-year limitation and its approval—without discussion—of *Linzalone* were unnecessary to its holding. Thus, we find *Garcia-Sarquiz* doubly dubious authority. We think *Ferretti v. Dulles*, 246 F.2d 544 (2d Cir.1957),[4] represents a better view. In *Ferretti,* the plaintiff was born in the United States and was taken to Italy by her parents at the age of three years. She subsequently registered and voted in elections there, and was advised in writing by the Vice-Consul of the United States that she had expatriated herself under provisions of the predecessor of 8 U.S.C. § 1481. She filed for a declaratory judgment adjudging her to be a national pursuant to the predecessor of 8 U.S.C. § 1503(a). Germane to the case before us is the finding of the court regarding its subject matter jurisdiction under § 1503(a). The court stated:

> It is our conclusion that the appellant had not alleged any denial, on the ground that she was not a national of this country, of a right or privilege she had as a national of the United States. . . .
>
> The notice that by voting she had become expatriated was not the denial of any specific right or privilege which she had claimed. Indeed, there is nothing to show that as of that time she had made any claim whatever and the notice did not leave her less free to claim any right or privilege as a United States national than she had been before she received it. Only after she had made such a claim and it had been denied on the ground that she was not a national of this country would she have been deprived of any right or privilege she may have had as such a national.

246 F.2d at 546.

*Ferretti* decided not only that there was no cognizable denial for § 1503(a) purposes, but also that the plaintiff had made no claim of any right or privilege as a national of the United States. We need not decide whether Whitehead's formal renunciation constituted a claim; for regardless of whether it was a claim, we find there was no denial such as would allow the time limitation of § 1503(a) to begin running. The issuance of a Certificate of Loss of Nationality due to formal renunciation of nationality is no more a "final administrative denial" of a claimed right or privilege than the issuance of a Certificate of Loss of Nationality due to voting in foreign elections.

Of course, a final administrative denial of a claim or right or privilege as a United States National is a prerequisite for maintaining a § 1503(a) action. The denial of Whitehead's passport application in 1980 is an occurrence which constitutes such a denial. *See Chin Chuck Ming v. Dulles*, 225 F.2d 849, 853 (9th Cir.1955). Since the complaint in this case was filed within five

---

**4.** *Ferretti* was not discussed by the district court in the instant case, and was not cited to the district court in oral argument, nor cited in the original briefs on appeal.

years of his passport denial, we conclude that his claim is not time barred under § 1503(a).[5]

Having decided this case on statutory grounds, we do not reach appellant's article III and due process arguments, and of course we make no adjudication on the merits of those claims.

## CONCLUSION

The judgment of the district court dismissing Whitehead's complaint will be reversed and the case remanded for proceedings consistent with this opinion.

---

5. While Judge Becker does not quarrel with the panel's approach, he notes that the same result could also be reached by a different route from that taken by the majority. Section 1503 provides a cause of action for a person who "claims a right or privilege as a National of the United States and is denied such right or privilege ..." if the suit is brought within five years of "final administrative denial." Judge Becker would focus on the question the majority reserves, namely, whether Whitehead made a claim. In 1965 Whitehead requested no right, privilege or benefit; he simply renounced his citizenship. Judge Becker believes that it would strain the ordinary meaning of the term "claim" to suggest that Whitehead made a claim at that time. Judge Becker is also concerned that the panel's holding may be at odds with the purpose of the statute of limitations, noting that as a result of the panel's decision, Whitehead will be able to challenge events that occurred over twenty years ago, notwithstanding the five-year statute of limitations. He fears that such a holding places a serious burden on the government to preserve records indefinitely and introduces significant problems of proof at the trial. The witnesses as to what happened in 1965 at the U.S. Embassy in Tokyo may be long gone or unavailable, for example. Judge Becker is uncertain that Congress intended that claims could be brought under § 1503 such a long time after the loss of citizenship; however, he believes that the statutory language compels that interpretation, and he observes that it is for Congress to amend the statute if it objects to the result.