**Werner T. HEUER, Plaintiff–Appellant,**

v.

**UNITED STATES SECRETARY OF STATE, Defendant–Appellee.**

No. 93–4574.

United States Court of Appeals, Eleventh Circuit.

May 5, 1994.

Douglas H. Stein, Miami, FL, for appellant.

Dexter A. Lee, Asst. U.S. Atty., Roberto Martinez, U.S. Atty., Miami, FL, for appellee.

Before BLACK, Circuit Judge, DYER, Senior Circuit Judge, and ALAIMO *, Senior District Judge.

PER CURIAM:

Appellant, Werner T. Heuer ("Heuer"), seeks review of the district court's dismissal with prejudice of his *pro se* action against Appellee, the United States Secretary of State ("Secretary of State"), for a declaration of United States nationality. The district court's dismissal was based upon a determination that the action was time-barred. We affirm.

* Honorable Anthony A. Alaimo, Senior U.S. District Judge for the Southern District of Georgia,

## I. FACTS

The facts of this case are taken as alleged by Appellant. Heuer, the son of Venezuelan nationals, was born in Washington, D.C., on August 9, 1956. Thus, by virtue of his parents' nationality and his place of birth, Heuer acquired both Venezuelan and United States citizenship. Heuer was raised primarily by his grandparents, who were extremely nationalistic Venezuelans, and who demanded that Heuer sever allegiance to the United States. Succumbing to family pressure, Heuer renounced his United States citizenship on October 27, 1977, as prescribed by 8 U.S.C. § 1481(a). On October 31, 1977, the United States embassy in Venezuela forwarded a Certificate of Loss of Nationality ("CLN") to the Department of State for its approval and issuance. On April 27, 1978, the Department of State approved and issued the CLN, thereby certifying Heuer's renouncement, effective October 31, 1977.

Thereafter, Heuer underwent a change of heart. In December 1988, after having permanently relocated to the United States, Heuer applied for a United States passport. The Miami Passport Agency denied the application on January 6, 1989, upon a determination that Heuer had become expatriated by his former renunciation of American citizenship. The Passport Agency's decision was affirmed by the Board of Appellate Review on January 18, 1991.

In September 1992, Heuer filed suit against the Secretary of State for a judicial Declaration of United States Citizenship. Heuer alleged that his prior renunciation of United States citizenship was due to familial coercion and duress. The United States District Court for the Southern District of Florida, King, J., dismissed the action with prejudice, for lack of subject matter jurisdiction. Specifically, the district court adopted the Report and Recommendation of the Magistrate Judge that the applicable five year statute of limitations, prescribed by 8 U.S.C. § 1503(a), began on April 27, 1978, when the Department of State approved and issued the

sitting by designation.

CLN, and that the declaratory action was, therefore, time-barred.

On appeal, Heuer maintains that the district court erred in determining when the statute of limitations was triggered. Heuer argues that the five year statute of limitations began not on April 27, 1978, when the CLN was issued, but, rather, on January 18, 1991, when his application for a United States passport was denied. Accordingly, as the September 1992 application for United States citizenship was within five years of January 18, 1991, Heuer contends that the district court's dismissal of his action was erroneous.

## II. ISSUE ON APPEAL

WHETHER THE DISTRICT COURT ERRED IN DETERMINING THAT THE ISSUANCE OF THE CLN TRIGGERED THE STATUTE OF LIMITATIONS, PURSUANT TO 8 U.S.C. § 1503(a).

## III. ANALYSIS

■ As the only issue before the Court is one of law, our standard of review is *de novo*. *Woodruff v. United States Dept. of Labor*, 954 F.2d 634, 636 (11th Cir.1992).

■ The Court's analysis begins with an examination of the elements of 8 U.S.C. § 1503(a), which prescribes the statute of limitations applicable to the current case. This statute provides in relevant part that:

If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency ... upon the ground that he is not a national of the United States, such person may institute an action ... for a judgment declaring him to be a national of the United States ... An action under this subsection may be instituted only within five years after the *final administrative denial* of such right or privilege ...

(Emphasis added.)

We note that the denial of an application for a United States passport is a denial of a right or privilege on a claim as a United States national, and that the denial stems from an administrative proceeding. The United States impliedly concedes this point. This is not, however, the focal issue. As a statute of limitations is involved, the view must be to the *first* possible trigger to begin the countdown. In this case, then, the issue may be restated to ask whether the prior approval and issuance of a CLN by the Department of State similarly falls under 8 U.S.C. § 1503(a). The Courts finds that it does.

Two lines of cases have potential bearing. The Secretary of State relies heavily on *Garcia–Sarquiz v. Saxbe*, 407 F.Supp. 789 (S.D.Fla.1974), *aff'd sub nom. Garcia–Sarquiz v. Levi*, 527 F.2d 1389 (5th Cir.1976) (per curiam). In that case, Plaintiff–Appellant, Eduardo Eladio Garcia–Sarquiz ("Garcia–Sarquiz"), renounced his American citizenship in 1947. The CLN was issued in 1951. In 1969, while residing in the United States, Garcia–Sarquiz was convicted of narcotics trafficking. The United States sought deportation in 1970. Garcia–Sarquiz argued against deportation by seeking a declaration of American citizenship pursuant to 8 U.S.C. § 1503. The district court, however, held that this provision was not available to persons proceeded against by way of exclusionary proceedings nor to those whose claim of nationality arose from an Order of Deportation. 407 F.Supp. at 792. The district court continued in *dicta* that even if Garcia–Sarquiz could invoke 8 U.S.C. § 1503, such an action would be time-barred because the statute of limitations began to run upon Garcia–Sarquiz's renouncement of citizenship and not upon the government's initiation of deportation, as Garcia–Sarquiz contended. *Id.* This *dicta* was the primary basis for the district court's ruling in the current case.

Heuer urges us, however, to disregard the *dicta* in *Garcia–Sarquiz*, and invites the Court to follow *Whitehead v. Haig*, 794 F.2d 115 (3rd Cir.1986) and *Maldonado–Sanchez v. Shultz*, 706 F.Supp. 54 (D.D.C.1989). In both cases, the issue before the respective Courts was whether the entry of a CLN or the subsequent denial of an application for a passport triggered the statute of limitations in 8 U.S.C. § 1503(a). In both cases, the

respective Courts found that it was the latter.

In *Maldonado–Sanchez,* under facts strikingly similar to those in the current case, the district court reasoned that the issuance of a CLN is not the *denial* of a right based on a claim as a United States national but, rather, the *grant* of a right as a United States national (*e.g.,* to renounce voluntarily American citizenship). 706 F.Supp. at 56–57. In *Whitehead,* the Third Circuit reasoned, on a slightly different basis, that the issuance of a CLN did not begin the limitation period because such an issuance is not the product of an administrative proceeding, but is, instead, a ministerial "rubber stamp." *See* 794 F.2d at 118. The Third Circuit apparently felt that there is no discretion by the Department of State in the approval and issuance of a CLN, and that such an absence indicates that there is no meaningful administrative procedure present.

We decline Heuer's invitation. While the statute of limitations discussion in *Garcia–Sarquiz* was *dicta,* and is not, therefore, binding precedent on the Court, the spirit and reasoning of that case mandate an affirmance herein. The Court views *Garcia–Sarquiz*'s discussion of the statute of limitations in 8 U.S.C. § 1503(a) as properly reasoned, and believe *Whitehead* and *Maldonado–Sanchez* were wrongly decided.

Contrary to the reasoning in *Maldonado–Sanchez,* the issuance of a CLN is a denial. Specifically, such an issuance denies the status to be recognized as a United States national, and all the rights and claims thereto. *Linzalone v. Dulles,* 120 F.Supp. 107, 109 (S.D.N.Y.1954). *See also Kahane v. Shultz,* 653 F.Supp. 1486 (E.D.N.Y.1987). Indeed, in the current case, Heuer's application for a United States passport was denied *because of* the prior issuance of a CLN. The fact that, in some instances, the plaintiff "requests" the denial by renouncing voluntarily his American citizenship does not change the existence of such a denial.

Moreover, the issuance of a CLN is not always the product of a voluntary renunciation of citizenship. The United States may, on its own accord, issue a CLN if it determines that a United States national expatri-ated himself by engaging voluntarily in conduct inherently inconsistent with retained United States nationality. *See* 8 U.S.C. § 1481. *See also Kahane,* 653 F.Supp. at 1492. Accordingly, even under Heuer's view, the issuance of a CLN is not always the *grant* of a right to disclaim purposefully United States nationality.

Contrary to the reasoning in *Whitehead,* the issuance of a CLN is also the product of administrative proceedings. As noted previously, the formal renunciation of citizenship is not the sole trigger for the issuance of a CLN. *See* 8 U.S.C. § 1481. The different statutory bases for the Department of State to find expatriation convey that more than a mere ministerial "rubber stamp" is involved. It further bears note that one who is issued a CLN may appeal its issuance to the Department of State's Board of Appellate Review. 22 C.F.R. § 50.52.

Moreover, the presence of administrative proceedings is made evident by virtue of the fact that the Department of State must ultimately and necessarily determine when to approve and issue a CLN. Until a CLN is approved and issued, any act of expatriation, whether or not intentional, is simply an act without significance to nationality or status. We emphasize that until such an approval and issuance by the Department of State occurs, the United States national is recognized as such, regardless of what act of expatriation is involved, even if he wishes to disavow American nationality.

We find, therefore, that the requirements mandated by 8 U.S.C. § 1503(a) are satisfied by the issuance of a CLN.

Beyond an examination of the statutory elements, we also reference the maxim of statutory construction that interpretations of statutes which lead to illogical or self-defeating results should not be imputed to the Legislature as the intended meaning of the statute. *See United States v. Castro,* 837 F.2d 441, 445 (11th Cir.1988). We feel that the current construction better conforms to this maxim than that in *Whitehead* and *Maldonado–Sanchez.* If a CLN is not deemed to be the denial of a right or privilege based on a claim of United States nationality, then

a former national would not be able to invoke 8 U.S.C. § 1503 to seek judicial review of the issuance of a CLN against him. Instead, he would thereafter have to apply for a passport, have the application denied, and *then* commence suit under 8 U.S.C. § 1503(a). This would be true even if the issuance of the CLN were within the statute of limitations, and even though the CLN is what is actually being challenged. We do not believe that such a required sequence of events was within the contemplation of this statute.

Therefore, for the reasons discussed above, we find that the issuance of a CLN is the denial of a right or privilege of United States nationality and is the product of administrative proceedings. Accordingly, the issuance of a CLN comports to 8 U.S.C. § 1503(a), and the statute of limitations therein is triggered if such an issuance is the first act of denial of a right or privilege based on a claim of United States nationality.

Because the decision of the Court is based on statutory grounds, it is unnecessary to address the policy considerations emphasized by the United States on appeal.[1]

CONCLUSION

On statutory grounds supported by public policy, we AFFIRM the decision below and hold as a matter of law that the issuance of a CLN is a denial of a right or privilege on a claim of United States nationality, within the meaning of 8 U.S.C. 1503(a), triggering the statute of limitations therein.

---

1. We note, however, that even the Court in *Maldonado–Sanchez* recognized the policy problems of its contrary position:

> The Court agrees with defendant's argument that to allow plaintiff to challenge his renunciation some twenty years after the fact is contrary to public policy. It places a tremendous burden on the government to produce witnesses years after the relevant events and to preserve documentation indefinitely. Moreover, a reasonable statute of limitations period serves the important function of mandating a review of the issuance of the CLN when the relevant events are fresh in the minds of the participants.
> 706 F.Supp. at 57–58.