### Jorge L. HOLGUÍN SOTO, Plaintiff

v.

### Hillary RODHAM–CLINTON, Secretary of the U.S. Department of State, Defendant.

### Civil No. 08–1890 (JAG).

United States District Court, D. Puerto Rico.

April 14, 2009.

---

Patrick D. O'Neill–Cheyney, O'Neill & Gilmore, San Juan, PR, for Plaintiff.

Rebecca Vargas–Vera, U.S. Attorney's Office, District of Puerto Rico, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before this Court is a Motion to Dismiss submitted by the Secretary of the United States Department of State Hillary Rodham–Clinton ("Defendant"). (Docket No. 9). For the reasons set forth below, Defendant's Motion to Dismiss is hereby **DENIED.**

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Jorge L. Holguín Soto ("Plaintiff") was born a United States citizen in El Paso, Texas in 1955. (Docket No. 1, p. 1). On August 3, 1978, while studying in Mexico, Plaintiff applied for a Certificate of Mexican Nationality and swore allegiance to Mexico. (Docket No. 1, p. 3). He apparently did so in order to benefit from the reduced tuition rates offered to Mexican citizens at Mexican universities. Plaintiff alleges that in order to complete his application for Mexican nationality, he had to appear before the United States Consulate in Mexico to renounce his United States citizenship. *Id.* Plaintiff also alleges that when he went to the United States consulate to renounce his United States citizenship the consul, at the time assured him that his status as a citizen of the United States would not be affected. *Id.* Nonetheless, on March 23, 1982, The United States Department of State approved a Certificate of Loss of Nationality ("CLN"). According to Plaintiff the CLN

was never notified to him. (Docket No. 1, pp. 3, 4). On 1983, Plaintiff returned to the United States and has lived and worked either in the continental United States or in Puerto Rico ever since. He currently lives and practices medicine in Aibonito, Puerto Rico. *Id.* at 4.

On June 21, 2007, Plaintiff applied for issuance of a United States passport for the first time. On March 4, 2008, the Miami passport agency denied his application stating that Plaintiff had ceased to be a United States citizen in 1982. On April 15, 2008, Plaintiff appealed the denial to the United States Department of State's Office of Policy Review and Interagency Liaison. On April 23, 2008, the denial was upheld. (Docket No. 1, p. 2)

On August 8, 2008, Plaintiff filed the present suit requesting a declaratory judgment and injunctive relief. Specifically, Plaintiff requests the following: (1) that the denial of his application for a passport be declared unlawful; (2) that the Secretary of the Department of State be permanently enjoined from denying Plaintiff's passport application; (3) that this Court order the Secretary of State to issue Plaintiff a passport; and, (4) that this Court grant any further relief that it may deem necessary and proper, including an award of costs and attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1] (Docket No. 1, pp. 6–7).

On December 18, 2008, Defendant filed a Motion to Dismiss. (Docket No. 9). In it, Defendant contends that: (1) this Court lacks jurisdiction to entertain the suit because, contrary to Plaintiff's allegation, neither 28 U.S.C. § 1331 ("Section 1331") nor the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* confer it;

---

**1.** The EAJA provides for the award of attorney fees and other expenses to eligible individuals and small entities that are parties to litigation against the government. *See* 28 U.S.C. § 2412. An eligible party may receive

an award when it prevails against the government, unless the government's position was substantially justified or special circumstances make an award unjust. *See U.S. v. Knott,* 256 F.3d 20 (1st Cir.2001).

(2) the action is time barred; and, (3) Plaintiff's claim is barred as a matter of law because his expatriation was voluntary.[2] (Docket No. 9). Plaintiff filed an Opposition to the Motion to Dismiss on January 23, 2009. (Docket No. 12). Defendant filed a Reply on February 10, 2009 and Plaintiff a Surreply on February 27, 2009. (Docket Nos. 17, 22).

## STANDARD OF REVIEW

Motions brought under Fed.R.Civ.P. 12(b)(1) are subject to the same standard of review as Rule 12(b)(6) motions. *Negron–Gaztambide v. Hernandez–Torres*, 35 F.3d 25, 27 (1st Cir.1994). In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court recently held that to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Rodriguez–Ortiz v. Margo Caribe Inc.*, 490 F.3d 92 (1st Cir.2007) (citing *Twombly*, 127 S.Ct. at 1967). While "Twombly does not require heightened fact pleading of specifics, it does require enough facts to nudge [Plaintiffs'] claims across the line from conceivable to plausible." *Twombly*, 127 S.Ct. at 1974. Accordingly, in order to avoid dismissal, Plaintiffs must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above speculative level." *Id.* at 1965.

The Court accepts all factual pleaded allegations as true, and draws all reasonable inferences in Plaintiffs' favor. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996).

When opposing a rule 12(b)(6) motion, "a Plaintiff cannot expect the trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiffs are responsible for putting their best foot forward in an effort to present a legal theory that will support their claim. *Id.* at 23 (citing *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d at 52). Plaintiffs must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

## DISCUSSION

### 1. *Jurisdiction*

■ Plaintiff alleges in the Complaint that the jurisdiction of this action is based on Section 1331 and on the APA, specifically 5 U.S.C. § 704, which prescribes the kinds of administrative actions that may be judicially reviewed. (Docket No. 1, p. 2). On the other hand, Defendant posits that there is no jurisdiction under Section 1331 because it only confers subject-matter jurisdiction for actions that arise under the laws of the United States. Defendant is correct. Section 1331 is not itself a source of jurisdiction and a federal question must appear on the face of the well-pleaded complaint. *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

■ Defendant also points out that 5 U.S.C. § 704 does not confer jurisdiction to review agency action but only prescribes how that jurisdiction is to be exercised once some other statute confers it. Defendant is also correct. "The APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review

---

**2.** Defendant also alleged that Plaintiff did not properly serve the Attorney General with summons. However, the issue is moot since this Court entered an order on March 16, 2009 giving Plaintiff additional time to serve summons upon him. (Docket No. 23).

agency actions." *Matos v. Secretary of Health, Ed. and Welfare,* 581 F.2d 282, 285 (1st Cir.1978) (citing *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). However, dismissal is not warranted.

██ Although Plaintiff failed to expressly state under which specific federal law he seeks relief, taking as true his factual allegations and drawing all inferences in his favor, it must be concluded that he brings a claim under Section 360(a) of the Immigration and Nationality Act, 8 U.S.C. § 1503(a) ("Section 1503").[3] A district court has jurisdiction over a claim brought under Section 1503 when: (1) a plaintiff that is within the United States claims a right or privilege as a national of the United States; (2) such right or privilege was denied by a department on the ground that the plaintiff was not believed to be a national of the United States; (3) the action is instituted against the head of the department that denied the plaintiff's claimed right or privilege; and, (4) the action was commenced within Section's 1503 five-year statute of limitation. *E.g., Messenger v. Rice,* No. 05–0053, 2006 WL 276933, at *3 (E.D.Wash. January 23, 2006). In the present case, this Court has jurisdiction because: (1) Plaintiff is within the United States and claims, as a national, the right or privilege of being issued a United States passport; (2) Plaintiff's application for a United States passport was denied by the United States Department of State; (3) Plaintiff has instituted the present action against the head of the United States Department of State; and, (4) Plaintiff has instituted the present action within the five-year statute of limitations. Therefore, Defendant's Motion to Dismiss on the grounds that this Court lacks subject-matter jurisdiction must be **DENIED.**

### 2. *Statute of Limitations*

Defendant contends that Plaintiff's action under Section 1503 is time barred because the five-year statute of limitation prescribed in said section has long expired. Section 1503 reads, in its pertinent part, "[a]n action under this subsection may be instituted only within five years after the final administrative denial of [a right or privilege as a national of the United States]." 8 U.S.C. § 1503. Defendant alleges that the statute of limitation began to accrue the day the CLN was issued by the Department of State on March 24, 1982 and that it expired on March 24, 1987. Defendant contends that Plaintiff's CLN is a "denial or a right or privilege" under Section 1503 because Section 358 of the Immigration and Nationality Act, 8 U.S.C. § 1501 ("Section 1501"), defines it as such.[4]

---

**3.** Section 1503 reads, in its pertinent part, "If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a).

**4.** Section 1501 reads, "Whenever a diplomatic or consular officer of the United States has reason to believe that a person while in a foreign state has lost his United States nationality under any provision of part III of this subchapter, or under any provision of chapter IV of the Nationality Act of 1940, as amended, he shall certify the facts upon which such belief is based to the Department of State, in writing, under regulations prescribed by the Secretary of State. If the report of the diplomatic or consular officer is approved by the Secretary of State, a copy of the certificate shall be forwarded to the Attorney General, for his information, and the diplomatic or consular office in which the report was made shall be directed to forward a copy of the certificate to the person to whom it relates.

Section 1501 regulates the procedure to be followed by diplomatic or consular officers and the Department of State when issuing a CLN. It also defines CLNs as "final administrative determinations" and as "denial[s] of a right or privilege for purposes of section 1503." 8 U.S.C. § 1501.

However, Section 1501 has not always defined CLNs as "denial[s] of a right or privilege." It was amended in 1994 by Pub.L. 103–416, § 106, 108 Stat. 4309 (1994) to add said language. "Prior to the 1994 amendment, the United States Code was silent with regard to the relationship between CLNs and the aforementioned § 1503(a) jurisdictional requirements and statute of limitation." *Messenger*, 2006 WL 276933, at *3. Currently, there is a split among the Circuits regarding the nature and effect of a CLN issued before 1994.

In *Heuer v. U.S. Secretary of State*, 20 F.3d 424 (11th Cir.1994), the Eleventh Circuit Court of Appeals held that the issuance of a CLN was a denial of a right or privilege on a claim of United States nationality which activated the statute of limitations because it was "the first possible trigger to begin the countdown." *Id.* at 426. It found that the five-year statute of limitations was triggered by a CLN because "such an issuance is the first act of denial of a right or privilege based on a claim of United States nationality." *Id.* at 428. The Eleventh Circuit is the only Circuit that has decided in favor of considering CLNs issued before 1994 as denials of a right or privilege of United States nationality for purposes of Section 1503. Hence, the Eleventh Circuit is alone in considering CLNs issued before 1994 as triggers for the five-year statute of limitations of Section 1503.

On the other hand, the Third and Seventh Circuit Courts of Appeals, along with a few district courts, support the proposition that a CLN issued before 1994 did not trigger the five-year statute of limitations.[5] In *Whitehead v. Haig*, 794 F.2d 115 (3rd Cir.1986), the Third Circuit held that the issuance of a CLN did not trigger the statute of limitations because no administrative procedure was involved in its issuance. It held, "that the automatic issuance of a Certificate of Loss of Nationality upon the act of formal renunciation does not constitute a final administrative denial for the purpose of determining when the five-year time limitation contained in § 1503(a) begins to run." *Id.* at 118. It also held that the denial of an application for a passport is the trigger of the statute of limitations because it is a denial of a right or privilege. *Id.* at 119. More recently, in *Bensky v. Powell*, 391 F.3d 894 (7th Cir. 2004), the Seventh Circuit Court of Appeals held that the a case filed pursuant to Section 1503 in 1998 was time barred. It found that the statute of limitations began to run, not with the issuance of a CLN in 1964, but rather with the decision of the State Department's Board of Appellate Review in 1985. It considered the latter, and not the former, as a denial of rights and privileges on a claim of United States nationality.

---

Approval by the Secretary of State of a certificate under this section shall constitute a final administrative determination of loss of nationality under this chapter, subject to such procedures for administrative appeal as the Secretary may prescribe by regulation, and also shall constitute a denial of a right or privilege of United States nationality for purposes of section 1503 of this title." 8 U.S.C. § 1501.

**5.** The following district courts have found that the issuance of a CLN before 1994 did not trigger the statute of limitations but that the denial of a passport did: *Icaza v. Shultz*, 656 F.Supp. 819, 822 (D.D.C.1987); *Maldonado–Sanchez v. Shultz*, 706 F.Supp. 54, 57 (D.D.C. 1989); *Messenger*, 2006 WL 276933, at *7.

This Court concurs with the Third and the Seventh Circuit Court of Appeals in holding that a CLN issued before 1994 does not trigger the five-year statute of limitations. We agree that CLNs issued before 1994 can not be deemed as denials of rights and privileges on a claim of United States nationality under Section 1503. Accordingly, in the present case, the issuance of Plaintiff's CLN in 1982 did not trigger the five-year statute of limitations. Instead, the five-year statute of limitations began to accrue on April 23, 2008, when the Director of Policy Review and Interagency Liaison sent a letter notifying Plaintiff that the denial of his passport application had been upheld by the Defendant. Therefore, Plaintiff's Section 1503 claim is not time barred and Defendant's Motion to Dismiss on this ground must be hereby **DENIED**.

### 3. *Voluntariness of Expatriation*

Defendant contends that Plaintiff's claim is barred as a matter of law because he failed "to show the requisite level of economic duress to overcome the statutory presumption that his Oath of allegiance to Mexico was voluntary." Docket No. 9, p. 15. In order to survive a motion to dismiss under Fed. R.Civ.P. 12(b)(6) a Plaintiff must only raise his right to relief above speculative level. *Twombly*, 127 S.Ct. at 1956. It is not necessary at this stage of the proceedings for Plaintiff to show that his alleged expatriation act was involuntary. The complaint alleges enough facts to allow a claim under Section 1503 to survive a motion to dismiss because it: (1) claims a right or privilege as a national of the United States; (2) such right or privilege was denied by a department of the ground that the Plaintiff was not believed to be a national of the United States; (3) the claim is against the head of the department that denied the plaintiff's claimed right or privilege; and, (4) the action was commenced within Section's 1503 five-year statute of limitation. *Messenger*, 2006 WL 276933, at *3. Defendant's Motion to Dismiss on the grounds that the claim is barred as a matter of law must therefore be **DENIED**.

### CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, (Docket No. 9), is hereby **DENIED**.

IT IS SO ORDERED.