[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14007
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-21898-DLG


JOHN CHRISTOPHER SPAULDING,

Plaintiff-Appellant,

versus

DR. JOSEPH POITIER,
a.k.a. John Poitier,
CAPTAIN DANIEL MERA,
Miami Dade Department and Rehabilitation,
OFFICER WILLIE RODGERS,
Miami Dade Department and Rehabilitation,
OFFICER JANEEN ABONZE,
Miami Dade Department and Rehabilitation,
OFFICER DEMORA PRUDENT,
Miami Dade Department of Corrections, et al.,

Defendants-Appellees,

JACKSON HEALTH SERVICES,
a.k.a. Miami Jackson Hospital, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 9, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

John Spaulding, currently a Florida prisoner proceeding pro se, appeals the

district court's grant of summary judgment in favor of Defendants, Miami-Dade

Corrections and Rehabilitation Department ("MDCR") staff, in his 42 U.S.C.

§ 1983 action.[1]  The claims at issue on appeal are against Dr. Joseph Poitier,

Captain Daniel Mera, Nurses Javan Etienne and Daniel Lamarche, and Officers

Janeen Abonze, Demora Prudent, Beverly Neal, and Guery Jasmin (collectively

"Defendants").  After review, we affirm.

## I.    BACKGROUND

We review the facts in the light most favorable to the plaintiff, the non-

movant.[2]  On the evening of May 14, 2008, Plaintiff John Spaulding ("Spaulding")

_____

[1]Although Spaulding raised numerous claims in his complaint, the district court
dismissed several of the claims prior to its summary judgment ruling.

[2]We review a district court's grant of summary judgment de novo, drawing all reasonable
inferences and reviewing all evidence in the light most favorable to the non-moving party.
Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  Summary judgment is appropriate "if
the movant shows that there is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant may meet that

2

was confined as a pretrial detainee at the Miami-Dade County Pretrial Detention Center. Spaulding declared himself suicidal to an MDCR officer. Despite this claim, Spaulding was not actually suicidal, and he only made this claim in order to be moved away from a different officer who was harassing him. Spaulding's plan worked, and he was moved to a cell on the Psychological Suicide Watch Floor.

## A.    Events on May 15, 2008

Early the next morning, Spaulding and another inmate argued, and staff reported that Spaulding was screaming incessant threats at other inmates and staff. After unsuccessful attempts were made to calm Spaulding, an officer handcuffed Spaulding. Spaulding was informed that he was to be injected with medication ordered by Dr. Joseph Poitier because Spaulding was "out of control." Upon learning that he was to be injected, Spaulding informed those present that he suffered from glaucoma, a condition that causes a decrease in vision over time. Spaulding was "bouncing up and down" in an attempt to avoid the injection. In order to administer the medication to Spaulding, officers pulled forcefully on Spaulding's handcuffs while the nurses and the other officers present restrained Spaulding by holding him around his neck and torso.

---

burden by showing that there is a lack of evidence to support the essential elements that the non-movant must prove at trial. Moton, 631 F.3d at 1341.

Nurse Daniel Lamarche injected Spaulding with medication, but the type of medication is disputed.  Spaulding claims that Nurse Lamarche injected him with Haldol, antipsychotic medication, against his will.  Defendants, however, claim that Spaulding was injected with Vistaril, a mild antihistamine, used for relieving anxiety.  The 2008 medical records show that "Vistaril" was injected on May 15, 2008, but Spaulding, in his affidavit, avers that it was Haldol.  Spaulding also submits a 2006 medical record where he was given Haldol.

A camera recorded the incident, but the video recording is no longer available.  Contrary to MDCR policy, no "use of force" report was prepared after the injection.

Following the injection, Spaulding fell unconscious.  When Spaulding awoke, he had blurred vision, bruises on his wrists and arms, and numbness in his hands.[3]  Later that day, Dr. Poitier reviewed Spaulding's medical condition.  Dr. Poitier determined that Spaulding was no longer a threat to himself or others, and thus, Dr. Poitier released Spaulding from the Psychological Suicide Watch Floor.  After observing Spaulding, Dr. Poitier concluded that Spaulding had no condition that warranted "emergent medical treatment" for any hand injury or vision problem.

---

[3]In some instances, Spaulding states that the numbness was only in his "thumbs," rather than his hands generally.  We use the term "hands" to encompass those instances in which he asserts that the numbness was only in his thumbs.

**B.    Subsequent Medical Treatment**

Spaulding admits that, sometime after the injection, he saw an eye doctor, who informed Spaulding that he was extremely nearsighted and prescribed him eyeglasses.  Spaulding's medical records confirm that, after complaining about blurry vision, he was referred to Bascom Palmer Eye Institute ("BPEI") for evaluation because his vision was worsening due to glaucoma.   His medical records show that he was seen at the BPEI on June 11, 2008, less than a month after the injection.  Spaulding was told to continue his current eye drops and to return if his vision declined.  Spaulding was seen at the BPEI again in August 2008.

As to his hand injury, Spaulding also admits that, within the two months following the injection, MDCR medical staff referred him to a sports medicine clinic for treatment of the numbness in his hands.  The Consultation/Referral Form, dated June 11, 2008, states that a medical professional was referring Spaulding to "Sports Medicine" for a consultation due to a "numbness feeling" in Spaulding's hands.  Although Spaulding visited the clinic, no one treated the numbness in his hands.  Spaulding, however, indicates that the numbness in his hands healed without treatment "some months" after the injection.

**C.    Lawsuit**

5

About two years later, in June 2010, Spaulding filed this action, alleging that Defendants violated his Eighth and Fourteenth Amendment rights by forcefully injecting him with Haldol without his consent and by exhibiting deliberate indifference to his medical needs. Spaulding amended his complaint in April 2011, and that amended complaint makes the same claims with more specificity and also alleges that Defendants violated his First Amendment right to free speech by injecting him with Haldol in retaliation for him speaking to another inmate.

The district court determined that Spaulding had not shown that Defendants deprived him of a constitutional right, and thus, the court denied Spaulding's motion for summary judgment and granted Defendants' motion for summary judgment. Spaulding filed this appeal.

## II.    LIBERTY INTEREST IN AVOIDING FORCED MEDICATION

Spaulding argues that his liberty interest under the Fourteenth Amendment was violated when MDCR staff forcibly injected him with the antipsychotic drug Haldol without his consent and without justification.[4]

Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." See Washington v. Harper, 494 U.S. 210,

---

[4]Spaulding also appeals the denials of his motion to strike Defendants' motion for summary judgment as untimely and of his motion for sanctions based on Defendants' delay in producing documents. However, Defendants' motion for summary judgment was timely filed within the extension of time the magistrate judge granted Defendants, and the record does not support Spaulding's claim of delay as to discovery.

6

221-22, 110 S. Ct. 1028, 1036 (1990) (discussing the Fourteenth Amendment as it applies to convicted prisoners); see also Riggins v. Nevada, 504 U.S. 127, 135, 112 S. Ct. 1810, 1815 (1992) (providing that pretrial detainees have an interest under the Fourteenth Amendment in avoiding forced antipsychotic medication).

Nevertheless, because of the requirements of the prison setting, prison officials are permitted to forcibly treat a mentally ill pretrial detainee with antipsychotic medication "if [he] is dangerous to himself or others and the treatment is in [his] medical interest." Harper, 494 U.S. at 227, 110 S. Ct. at 1039-40; see Riggins, 504 U.S. at 135, 112 S. Ct. at 1815. Although the forcible injection of medication into a non-consenting person's body represents a substantial interference with that person's liberty, the Supreme Court has observed that an inmate's liberty interests are "are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge." Harper, 494 U.S. at 231, 110 S. Ct. at 1042.

Defendants first argue that Spaulding was not given the antipsychotic medication Haldol, but only the antianxiety drug Vistaril. That creates a close issue because Harper only involved antipsychotic drugs, and the Supreme Court did not expressly address whether its holding applies to other categories of drugs. In addition, Spaulding's averment about Haldol is arguably conclusory.

7

But even accepting Spaulding's version of events, that Haldol was administered, we conclude that Defendants adequately showed Spaulding was a danger to himself and others. Thus, we conclude his liberty interests were not violated by the administration of antipsychotic medication under the particular facts here. As noted above, prison officials are constitutionally permitted to forcibly treat an inmate with antipsychotic medication when that inmate is a danger to himself or others. See id. at 227, 110 S. Ct. at 1039-40. According to the record, Spaulding had declared himself suicidal, and his behavior, including screaming incessantly and threatening staff and other inmates, indicated that he was agitated on the date of the injection. In his affidavit, Spaulding swore that he was not a danger to himself or others, but he has never denied that he declared himself suicidal, that an argument ensued with another pretrial detainee, and that he screamed threats at other pretrial detainees and MDCR staff. Further, Spaulding has not claimed that he told anyone that he was not actually suicidal and had only declared himself suicidal to avoid an officer who harassed him. Thus, Defendants had no reason to believe that he was not suicidal.

Spaulding also failed to present any evidence showing that this one injection of him with antipsychotic medication was not medically appropriate.[5] See id. at

_____

[5]We emphasize that, in this case, Defendants are not seeking to continue treating Spaulding with Haldol, and Spaulding has not alleged that he is continuing to be treated with Haldol. Thus, we have no occasion to discuss the state's burden of establishing the continued

8

227, 110 S. Ct. at 1039-40.  He has not shown that, if he presented a danger to himself, Haldol was a medically inappropriate choice of drug with which to treat his described behavior on that day.  In his affidavit, Spaulding only claimed that Haldol should not be used to treat an individual with glaucoma, but he failed to provide any medical basis for his asserted belief.  His unsupported, conclusory statement fails to show that Haldol was not in his medical interest.  See Ellis v. England, 432 F.3d  1321, 1327 (11th Cir. 2005) (providing that unsupported, conclusory statements not based on personal knowledge are insufficient to withstand a motion for summary judgment).   Based on the record in this particular case, Spaulding has not shown that Defendants violated his liberty interests in administering the injection of Haldol.  See Harper, 494 U.S. at 227, 110 S. Ct. at 1039-40.

## III.    DELIBERATE INDIFFERNCE TO SERIOUS MEDICAL NEEDS

Spaulding also contends that Defendants were deliberately indifferent to his medical needs by: (1) administering a drug that they knew could cause an adverse reaction based on his diagnosed glaucoma; and (2) failing to treat his injuries sustained during and after the injection, including bruises, blurry vision, and numbness in his hands.

---

need and medical appropriateness of treatment involving antipsychotic medication.  See Riggins, 504 U.S. at 135, 112 S. Ct. at 1815; cf. United States v. Diaz, 630 F.3d 1314, 1331-32 (11th Cir. 2011) (providing that the government must show by clear and convincing evidence that involuntary medication is necessary to render a defendant competent to stand trial).

Deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment Due Process Clause.  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007) (explaining that the standards that govern an Eighth Amendment claim of deliberate indifference also govern a pretrial detainee's claim under the Fourteenth Amendment).  To establish deliberate indifference, the pretrial detainee must show three elements: (1) he had a serious medical need; (2) the prison official acted with deliberate indifference to that serious medical need; and (3) the prison official's deliberate indifference caused the pretrial detainee injury.  Id.  The second element is the subjective component of the claim, wherein the inmate must show that the individual defendant prison official had (1) "subjective knowledge of a risk of serious harm; (2) disregard[ed] . . . that risk; (3) by conduct that is more than gross negligence."  Id. at 1327 (bracket omitted); see Campbell v. Sikes, 169 F.3d 1353, 1363-66 (11th Cir. 1999) (discussing the subjective component of an Eighth Amendment claim of deliberate indifference to psychiatric medical needs).

A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is inappropriate for imposing § 1983 liability. Adams v. Poag, 61 F.3d 1537, 1547 (11th Cir. 1995).  Negligence as to a diagnosis or treatment, or even medical malpractice, does not constitute deliberate indifference.  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

10

We cannot say that the district court erred in concluding that Spaulding's evidence failed to show that Defendants acted with deliberate indifference to Spaulding's glaucoma condition when they injected Spaulding with medication. Spaulding essentially argues that Dr. Poitier committed medical malpractice in selecting a medication, but a medical malpractice claim is inappropriate for imposing § 1983 liability. See Adams, 61 F.3d at 1547; Bingham, 654 F.3d at 1176. To the extent Spaulding raises a claim of deliberate indifference against Dr. Poitier for releasing him into the general prison population shortly after he was injected with Haldol, rather than keeping him under closer observation, his claim fails, as he has not shown a causal link between his injuries and the alleged wrongful conduct of releasing him to the general prison population. See Goebert, 510 F.3d at 1326.

Spaulding's claim, that Defendants refused any treatment of his blurry vision after the injection, is refuted by the record. Dr. Poitier examined Spaulding hours after the injection and found "no condition warranting emergent medical treatment for any alleged hand injury or vision problem." Furthermore, the medical records show that Spaulding was referred for, and received, medical care for his blurry vision. Finally, Spaulding has not shown that Dr. Poitier's failure to find that Spaulding needed immediate treatment for his hand injuries was conduct that surpassed gross negligence. Subsequent to Dr. Poitier's examination, MDCR

11

medical staff examined Spaulding and referred him to a sports medicine clinic for treatment of his hands. Although Spaulding claims he was never treated at the clinic in relation to his hand injuries, he has not shown that Defendants played any role in the clinic's treatment of Spaulding. In addition, Spaulding acknowledges that he healed on his own "after some months." Accordingly, Spaulding's claim of deliberate indifference has no basis in the record and thus does not present a genuine dispute as to a material fact.

## IV.    EXCESSIVE USE OF FORCE

Spaulding further argues that Defendants used excessive force when they injected him, asserting that he was not a threat to himself or others.

We analyze a pretrial detainee's claim of excessive force under the Fourteenth Amendment as if it were an excessive-force claim under the Eighth Amendment. Fennell v. Gilstrap, 559 F.3d 1212, 1216 n.5 (11th Cir. 2009). A prison official's use of force against a pretrial detainee is excessive under the Fourteenth Amendment if it "shocks the conscience," meaning that it is applied "maliciously and sadistically to cause harm." Id. at 1217 (internal quotation marks omitted). We evaluate five factors relevant to ascertaining whether force was used maliciously and sadistically: (1) the extent of the injury; (2) the need for the use of force; (3) the relationship between that need and the amount of force used; (4) efforts made to temper the severity of a forceful response; and (5) the extent of

12

the threat to the safety of staff and inmates, as reasonably perceived by officials. See id.

Based on this record, we cannot conclude that Defendants used excessive force against Spaulding. First, Spaulding's injuries generally were de minimis, although we note his claim that his hands remained numb for a number of months before healing on their own. See id. Although Spaulding claims that the injection caused his vision to worsen, his medical records make no such indication, and he has not submitted any medical evidence to support that claim. If anything, the record shows that the worsening of his vision is related to his glaucoma and nearsightedness. Second, there was a medical need for the Defendants' shown use of force because a medical professional ordered that Spaulding be injected with medication due to his agitation and other behavior. See id. Third, Spaulding was only briefly restrained so that he could receive the necessary injection. See id. Fourth, the record shows that Defendants attempted to calm Spaulding before using force. See id. Finally, based on Spaulding's declared suicidal state and behavior, Defendants reasonably perceived that Spaulding may harm himself, staff, or other pretrial detainees. See id. Thus, given the overall record in this particular case, restraining Spaulding to administer this one prescribed injection did not "shock the conscience," and summary judgment was appropriately granted in favor of Defendants. See id.

13

## V.    FIRST AMENDMENT RETALIATION

Spaulding's First Amendment retaliation claim is refuted by the record, and is supported only by his conclusory assertions. As discussed above, Spaulding was administered medication to protect him and others, not to punish him for speaking to another inmate. Accordingly, summary judgment was also properly granted in favor of Defendants on this claim. See Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (holding that mere verification of a party's own conclusory allegations is insufficient to withstand a motion for summary judgment).

## VI.    MOTION TO AMEND

Spaulding argues that the district court should have granted him leave to amend his complaint to add a claim against Captain Daniel Mera. Specifically, the proposed claim alleged that, (1) because of Captain Mera's supervisory role at the Miami-Dade County Pretrial Detention Center, he had a legal duty to ensure the preservation of the May 15, 2008 video recording, and (2) he breached that duty when the recording was destroyed.

We review the denial of leave to amend a pleading for an abuse of discretion. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007). After a party has amended its pleading once as a matter of course, the party may amend its pleading only with the opposing party's written consent or with the court's leave. Fed. R. Civ. P. 15(a)(2). District courts may properly deny leave to amend when

14

an amendment would be futile. Cockrell, 510 F.3d at 1310. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." Id.

The magistrate judge did not abuse his discretion in denying Spaulding leave to amend his complaint because such an amendment would have been futile. See id. Although the magistrate judge did not specifically deny Spaulding's motion on the basis of its futility, we may affirm on any grounds supported by the record. Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1088 n.21 (11th Cir. 2007). Spaulding proposed to add a Bivens[6] claim against Captain Mera, cognizable only against federal officers and not state officers such as Captain Mera, for his failure as supervisor to ensure the preservation of video evidence. See Wilson v. Blankenship, 163 F.3d 1284, 1288 (11th Cir. 1998) ("[A] Bivens case challenges the constitutionality of federal officials' conduct, while § 1983 challenges the constitutionality of state officials' conduct."). However, even if we liberally construe this as a § 1983 claim, it is still futile because Spaulding did not claim that Captain Mera personally participated in the alleged constitutional violation or that he was somehow causally connected to the alleged constitutional violation. See Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (providing that

---

[6]Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971).

15

§ 1983 claims may not be brought against supervisory officials on the basis of theories of vicarious liability or <u>respondeat</u> <u>superior</u>).[7]

In connection with Spaulding's claim against Captain Mera, Spaulding also appeals the denial of his motion for a transcript of a status conference hearing. The magistrate judge found that there was no transcript of that hearing, and Spaulding has not shown otherwise, such that the denial was proper. Moreover, despite Spaulding's repeated, conclusory allegations to the contrary, there is no evidence that Defendants intentionally destroyed the videotape to conceal evidence.

For all the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants.

**AFFIRMED.**

---

[7]In the district court, Spaulding conceded that the only claims in his amended complaint against Captain Mera were based on Captain Mera's supervisory liability, which may not be brought under § 1983. Those claims against Captain Mera are not at issue on appeal.

16