Raymond Nicholas HARRIS, Plaintiff,

v.

DEPARTMENT OF HOMELAND SECURITY, et al., Defendants.

Case No. 13–61243–CIV.

United States District Court, S.D. Florida.

Signed April 30, 2014.

Filed May 1, 2014.

As Amended May 8, 2014.

---

Carolina Armendi Collado, George E. Crimarco, PA, Coral Gables, FL, for Plaintiff.

Lori B. Warlick, United States Department of Justice, Washington, DC, for Defendants.

### ORDER GRANTING MOTION TO DISMISS

ROBIN S. ROSENBAUM, District Judge.

This matter is before the Court upon Defendants' Motion to Dismiss [D.E. 27].

The Court has reviewed the Motion, all supporting and opposing filings, and the record in this case and is otherwise fully advised in the premises. For the reasons that follow, the Court now grants Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiff Raymond Harris brings an action against Defendants United States of America, Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), Janet Napolitano, Alejandro Mayorkas, Linda Swacina, and Eric H. Holder, Jr. ECF No. 19 at 1–2, ¶¶ 2–5. Harris seeks a declaratory judgment under 28 U.S.C. § 2201 (Count I) and review of an adverse agency action under 5 U.S.C. § 703 (Count II). *Id.* at 7–9, ¶¶ 34–43. In addition, Harris brings a claim for violation of his right to equal protection under the law under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments (Count III). *Id.* at 9–10, ¶¶ 44–48. Ultimately, Harris asks this Court to overturn USCIS's decision denying him citizenship. *Id.*

Harris was born out of wedlock in Kingston, Jamaica, on June 6, 1996, to Winsome Mullings and Winston Harris. ECF No.

19 at 3, ¶ 12. On August 14, 2008, when Harris was twelve years old, his father became a naturalized United States citizen. *Id.* at 3, ¶ 14. After filing the appropriate forms and interviewing at the United States Embassy and Consulate in Kingston, Harris was admitted to the United States as a lawful permanent resident on August 1, 2010, under the custody of his father. *Id.* at 4, ¶¶ 15–17. Harris then sought to become a United States citizen under the provisions of the Child Citizenship Act of 2000, 8 U.S.C. §§ 1431 *et seq.* ("CCA").[1] *Id.* at 4, ¶ 18. In furtherance of this goal, on September 26, 2011, Harris filed a form N–600, Application for Certificate of Citizenship, with the United States Department of State. *Id.*

The Field Office Director denied Harris's application because, although Harris technically met the requirements under the CCA at 8 U.S.C. § 1431(a), he did not qualify as a "child" as defined by the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* ("INA"). *Id.* at 4, ¶ 20. The denial clarified that Harris purportedly had not been "legitimated" by his unmarried parents and, therefore, did not meet the definition of a "child" under the INA.[2] *Id.* at ¶ 28.

---

1. The CCA provides,

> A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
>
> (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
> (2) The child is under the age of eighteen years.
> (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1431(a).

2. Section 1101(c)(1) defines "child" as follows:

> an unmarried person under twenty-one years of age and includes a child legitimat-

ed under the law of the child's residence or domicile, or under the law of the father's residence or domicile whether in the United States or elsewhere, if such legitimation takes place before the child reaches the age of sixteen years and the child is in the legal custody of the legitimating or adopting parent or parents at the time of such legitimation or adoption.

8 U.S.C. § 1101(c)(1). Plaintiff Harris contends that he was legitimated under Jamaican law, and therefore meets the definition of a "child" under the pertinent immigration laws. Harris cites to the Jamaican Status of Children Act, enacted in 1976, which states,

> 2.—(1) In this Act—
>
> "child" includes a child born out of wedlock.
>
> . . . .

On August 23, 2012, Harris filed a form I–290B, Notice of Appeal or Motion, with a Motion to Reopen and a Motion to Reconsider. *Id.* at 4, ¶ 21. The Deputy Field Office Director issued a decision on October 16, 2012, denying Harris's motion to reopen his N–600 application. *Id.* at 4, ¶ 22. Harris continues to reside in Broward County in the custody of his father. *Id.* at 1, ¶ 1.

Harris maintains that because all conditions precedent to acquiring United States citizenship through his father have occurred, his N–600 application was improperly denied. *Id.* at 6, ¶¶ 31, 32. Harris further contends that he has been denied rights and privileges claimed as a United States citizen within the meaning of 8 U.S.C. § 1503 and seeks a declaration that he is indeed a United States citizen. *Id.* at 7, ¶¶ 35, 37. In addition, Harris asserts that the denial of his N–600 application was arbitrary, capricious, and contrary to law within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq.* ("APA"), and that his equal-protection rights have been violated. *Id.* at 8, 10, ¶¶ 43, 47.

## II. ANALYSIS

In their Motion to Dismiss, Defendants argue that this Court lacks jurisdiction over Harris's 8 U.S.C. § 1503 claim because Harris has not exhausted his administrative remedies in that he failed to appeal his N–600 denial to USCIS's Administrative Appeals Office ("AAO").[3] ECF No. 27 at 5–7. With regard to Harris's declaratory-judgment claim, Defendants assert that the exhaustion requirement is jurisdictional and may not be waived. As for the equal-protection claim, Defendants contend that the doctrine of prudential exhaustion should require Harris to first pursue his claim with the AAO. *Id.* at 7. Finally, Defendants assert that Harris has failed to state a claim under the Administrative Procedure Act.[4] *Id.* at 9.

### A. Declaratory Judgment (Count I)

Harris's first count seeks a declaration under the Declaratory Judgment Act, 28

3.—(1) ... for all the purposes of the law of Jamaica the relationship between every person and his father and mother shall be determined irrespective of whether the father and mother are or have been married to each other, and all other relationships shall be determined accordingly.

(2) The rule of construction whereby in any instrument words of relationship signify only legitimate relationship in the absence of a contrary expression of intention is hereby abolished.

Jamaican Status of Children Act §§ 2, 3 (1976).

3. The INS established the Administrative Appeals Unit ("AAO") in 1983 for the purpose of centralizing the review of administrative appeals. http://www.uscis.gov/about-us/directorates-and-programs-appeals-office-aao/administrative-appeals-office-aao (last visited April 30, 2014). Later, the INS created the Legalization Appeals Unit to adjudicate appeals of denied Legalization and Special Agri-cultural Worker applications under the Immigration Reform and Control Act of 1986. *Id.* In 1994, the two units were consolidated to create the AAO. *Id.* The duties of the INS were taken over by the Department of Homeland Security on March 1, 2003, pursuant to the Homeland Security Act of 2002, 6 U.S.C. §§ 251, 252, 271, 291. Now, the AAO is within USCIS, within the Department of Homeland Security. *See* http://www.uscis.gov/about-us/directorates-and-programs-appeals-office-aao/administrative-appeals-office-aao. Some legal sources still refer to the "AAO," but this Order uses the acronym AAO since it is more current.

4. Defendants also argue that Harris has failed to state a claim under the Mandamus Act. ECF No. 27 at 9. In his Amended Complaint, however, Harris withdrew all claims brought under the Mandamus Act. *See* ECF No. 19. Accordingly, the Court does not address this argument.

U.S.C. § 2201, that he is a United States citizen within the meaning of 8 U.S.C. § 1503(a). ECF No. 19 at 7–8, ¶¶ 34–41. Section 1503(a) specifically provides that a person denied a declaration of United States nationality may initiate a proceeding under the Declaratory Judgment Act for a judgment declaring him to be a national of the United States. 8 U.S.C. § 1503(a).

■ The Declaratory Judgment Act "does not, of itself, confer jurisdiction upon the courts; a suit brought under the Act must state some independent source of jurisdiction, such as the existence of diversity or the presentation of a federal question." *Borden v. Katzman,* 881 F.2d 1035, 1037 (11th Cir.1989) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)). Thus, an independent basis for jurisdiction must exist for the Court to review Harris's claim for declaratory judgment.

■ Defendants contend that this Court lacks jurisdiction because Harris was required to further pursue administrative action in the form of an appeal to the AAO before he could properly bring suit in federal court. According to Defendants, only after exhaustion of the AAO process may an alien seek a declaration of citizenship in a district court. Section 1503(a) governs "[p]roceedings for declarations of United States nationality" and states, in relevant part,

If any person who is within the United States claims a right or privilege as a national of the United States and is de-

nied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 [Declaratory Judgment Act] against the head of such department or independent agency for a judgment declaring him to be a national of the United States. . . . An action under this subsection may be instituted only within five years after the *final administrative denial* of such right or privilege and shall be filed in the district court of the United States for the district in which such person resides or claims a residence, and jurisdiction over such officials in such cases is conferred upon those courts.

8 U.S.C. § 1503(a) (emphasis added). Because such an action may be instituted only within five years of a final administrative denial, the question then becomes whether the denial of Harris's I–290B Motion to Reopen or Reconsider the denial of his N–600 application constitutes a "final administrative denial." The Court finds that it does not.

The Code of Federal Regulations provides that certain unfavorable decisions on applications for citizenship, petitions, and other types of cases may be appealed. *See* 8 C.F.R. § 103.3(a)(1)(ii). In addition to an appeal, an aggrieved party may exercise other avenues of redress, such as the filing of a motion to reopen or reconsider.[5] *See id.* § 103.5(a)(1)(i). Harris contends that the denial of his Motion to Reopen or Reconsider amounted to a final administra-

---

**5.** A motion to reopen or reconsider is reviewed by the official who made the latest decision in the proceeding. Thus, the motion would be submitted to the same individual who denied Harris's N–600, not to the AAO or to any other entity. 8 C.F.R. § 103.5(a)(1)(ii). An appeal is also initially reviewed by the official who made the unfavorable decision.

*Id.* § 103.3(a)(2)(ii). But if the reviewing official determines that favorable action is not warranted, the appeal is forwarded to the AAO in Washington, D.C., for consideration. *Id.* § 103.3(a)(2)(iv). A motion to reopen or reconsider is never automatically forwarded to the AAO.

tive denial in his case. But contrary to Harris's contention, the denial of a motion for reopening or reconsideration does not render the administrative decision final.

The governing regulations clearly contemplate that an appeal to the AAO may be taken upon the denial of such a motion when the original motion is itself appealable. *See id.* § 103.5(a)(6). In this regard, the regulations state, "A field office decision made as a result of a motion [to reopen or reconsider] may be applied [sic] to the AAO only if the original decision was appealable to the AAO." *Id.* Harris has pointed to no reason that the original decision on his N–600 application or the decision on his Motion to Reopen or Reconsider is not appealable to the AAO. Nor is this Court aware of any such reason. Therefore, Harris's Motion to Reopen or Reconsider cannot constitute a "final administrative denial" under § 1503(a) because the denial of the Motion is appealable. *Cf. Russell v. INS,* 1999 WL 675255 (N.D.Ill.1999) (finding that the plaintiff had failed to exhaust administrative remedies where he filed suit in federal court while his appeal was still pending before the AAO). As a result, Harris must first file an appeal with the AAO in order to exhaust his administrative remedies.

Courts have identified several "[k]ey reasons" for the exhaustion requirement: "1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." *N.B. by D.G. v. Alachua County Sch. Bd.,* 84 F.3d 1376, 1378–79 (11th Cir.1996) (citing *Ass'n for Retarded Citizens of Ala-*

*bama v. Teague,* 830 F.2d 158, 160 (11th Cir.1987)).

■■■ The requirement that a plaintiff first exhaust his administrative remedies before seeking redress in federal court may be either jurisdictional or nonjurisdictional. *See Mahon v. U.S. Dep't of Agric.,* 485 F.3d 1247, 1262 n. 13 (11th Cir.2007); *Alexander v. Hawk,* 159 F.3d 1321, 1325–26 (11th Cir.1998). An exhaustion requirement is jurisdictional if Congress has clearly premised federal jurisdiction on exhaustion of remedies. Federal courts enjoy only limited jurisdiction. *United States v. Rojas,* 429 F.3d 1317, 1320 (11th Cir.2005) (citations omitted). Under the Constitution, it is Congress that defines the jurisdiction of the lower federal courts. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citation omitted). As the Supreme Court has explained, "[O]nce the lines are drawn, 'limits upon federal jurisdiction ... must be neither disregarded nor evaded[.]'" *Id.* (citation omitted). Thus, if a statute requires exhaustion of administrative remedies in order for jurisdiction to lie, the district court is not free to ignore or excuse that requirement for any reason, as the court's very jurisdiction depends on exhaustion. *See McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required.") (citations omitted);

■■■ A nonjurisdictional exhaustion requirement may arise from either statutory language that is not jurisdictional but nonetheless requires exhaustion or from the court's prudential considerations. *See id.; see also Avocados Plus Inc. v. Veneman,* 370 F.3d 1243, 1246–47 (D.C.Cir. 2004). Unlike jurisdictional exhaustion requirements, courts may excuse failure to satisfy nonjurisdictional exhaustion requirements under certain limited circum-

stances. *McCarthy*, 503 U.S. 140, 112 S.Ct. 1081.

Whether an exhaustion requirement is jurisdictional presents a question of statutory interpretation. *Avocados Plus Inc.*, 370 F.3d at 1247 (citing *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Courts "presume exhaustion is non jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision[.]' " *Id.* (citation omitted).

Arguably, the Eleventh Circuit's predecessor court concluded that the exhaustion requirement set forth in Section 1503(a) is jurisdictional. In *Garcia–Sarquiz v. Levi*, 527 F.2d 1389 (5th Cir.1976) (*per curiam* ), the former Fifth Circuit affirmed *Garcia–Sarquiz v. Saxbe*, 407 F.Supp. 789 (S.D.Fla.1974), *aff'd sub nom. Garcia–Sarquiz v. Levi*, 527 F.2d 1389 (5th Cir.1976) (*per curiam* ), on the basis of the district court's opinion in that case. The district court, in turn, found itself to be without subject-matter jurisdiction to issue a declaratory judgment under Section 1503(a) because the plaintiff had failed to bring his claim within five years of the final denial of a fundamental right or privilege of a National of the United States. 407 F.Supp. at 792. In reaching its decision, the court explained that Section 1503(a) "enables a person who has received a final denial of a right or privilege of a national of the United States upon the ground that he is not such a national, to bring an action for declaratory judgment declaring him to be such a national." *Id.* The court then went on to note that "[t]he right to bring such a declaratory judgment action is limited by the requirement that the action must be brought within five years of the final denial of the right or privilege as a National of the United States." *Id.* Because nineteen years had passed between the final denial of the plaintiff's right and his institution of court action, the court held that Section 1503(a) precluded jurisdiction.

As *Garcia–Sarquiz* is close but perhaps not exactly on all fours with the facts in the instant case, the Court further considers whether Section 1503(a)'s exhaustion requirement is jurisdictional. In so doing, the Court notes that other courts that have considered the issue have concluded that the requirement is jurisdictional. *See, e.g., Johnson v. Whitehead*, 647 F.3d 120, 125 (4th Cir.2011) (finding that plaintiff's habeas corpus petition was jurisdictionally barred because he failed to exhaust his administrative remedies by appealing the rejection of his N–600 to the AAO); *United States v. Breyer*, 41 F.3d 884, 891–92 (3d Cir.1994) ("[A] federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies.") (citation omitted); *Parham v. Clinton*, 374 Fed.Appx. 503, 504–05 & 505 n. 3 (5th Cir.2010) (affirming district court's dismissal of claim under Section 1503(a) for lack of jurisdiction where plaintiff did not exhaust administrative remedies); *see also Ferretti v. Dulles*, 246 F.2d 544 (2d Cir.1957) (affirming district court's dismissal of plaintiff's claim for lack of jurisdiction where plaintiff did not exhaust her administrative remedies); *Fletes–Mora v. Brownell*, 231 F.2d 579 (9th Cir.1955) (affirming district court's dismissal of plaintiff's claim for lack of jurisdiction where, among other shortcomings, the complaint made no averments of fact that the matter was filed within five years after final administrative denial of a claimed right or privilege); *Dung Quoc Nguyen v. U.S. Dep't of Homeland Sec.*, 2011 WL 1499216, *4 (S.D.Miss. Jan. 21, 2011) (based on plaintiff's failure to exhaust administrative remedies, court found itself without jurisdiction).

 This Court agrees that Section 1503(a)'s exhaustion requirement is jurisdictional. In reaching this conclusion, the Court starts its analysis by looking to the text of Section 1503(a). As the Eleventh Circuit has explained, "[w]hen we construe a statute, 'we must begin, and often should end as well, with the language of the statute itself.'" *Silva–Hernandez v. U.S. Bureau of Citizenship & Immigration Servs.*, 701 F.3d 356, 361 (11th Cir.2012) (citation omitted). When statutory language is unambiguous, courts must give it effect. *See Owens v. Samkle Automotive Inc.*, 425 F.3d 1318, 1321 (11th Cir.2005) (citation omitted).

Here, Section 1503(a), by its terms, makes exhaustion of administrative remedies a jurisdictional requirement. In particular, the statute allows for the filing of an action in district court *"only* within five years *after* the *final administrative denial* [by a department, independent agency, or official of a department or independent agency] of [a right or privilege as a national of the United States]. 8 U.S.C. § 1503(a) (emphasis added). Moreover, the sentence following that requirement provides that *"jurisdiction* over such officials in such cases *is conferred upon those [district] courts." Id.* (emphasis added). This second sentence confers "jurisdiction" on district courts in cases under Section 1503(a) "only" where the plaintiff has brought the action within five years after the allegedly offending agency has made a final determination regarding the plaintiff's rights.

 Where a statute does not define its own terms, courts look to the "common usage of words for their meaning." *Koch Foods, Inc. v. Sec'y, U.S. Dep't of Labor,* 712 F.3d 476, 480 (11th Cir.2013) (citation

omitted). To ascertain a word's common usage, courts often consider the dictionary definitions of words. *Id.* (citation omitted). "Only" means "[e]xclusively; solely...." *The American Heritage Dictionary of the English Language* 1230 (4th ed.2000). Thus, by its terms, the language in Section 1503(a) clearly and unequivocally indicates congressional intent to bar district-court jurisdiction when a plaintiff fails to exhaust his administrative remedies, and exhaustion is a jurisdictional requirement. Because exhaustion is a jurisdictional requirement, a plaintiff's failure to exhaust administrative remedies deprives the Court of jurisdiction, and the court may not waive the exhaustion requirement. *See Lifestar Ambulance Serv., Inc. v. United States,* 365 F.3d 1293, 1296 (11th Cir.2004).

Not only does the language of Section 1503(a) demonstrate that the exhaustion requirement is jurisdictional, but comparison of the language employed in Section 1503(a) to that used in other statutes where courts have considered whether the provisions impose jurisdictional or nonjurisdictional exhaustion requirements further supports the conclusion that Section 1503(a)'s exhaustion requirement is jurisdictional.

For example, in *Huang v. Secretary United States Department of Homeland Security,* 468 Fed.Appx. 932 (11th Cir. 2012), the Eleventh Circuit, in an unpublished opinion, considered whether 8 U.S.C. § 1421(c)'s exhaustion requirement is jurisdictional and concluded that it is.[6] *See id.* at 935; *see also Karam v. U.S. Citizenship & Immigration Servs.,* 373 Fed.Appx. 956 (11th Cir.2010); *see also Sundar v. INS,* 328 F.3d 1320 (11th Cir.

---

**6.** Other circuits have reached the same conclusion. *See, e.g., Escaler v. United States Citizenship and Immigration Servs.,* 582 F.3d 288, 292 (2d Cir.2009); *Aparicio v. Blakeway,* 302 F.3d 437 (5th Cir.2002).

2003) (citing Eleventh Circuit cases holding that 8 U.S.C. § 1252(d)(1)'s provision that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right" is jurisdictional). Section 1421(c) provides, in pertinent part, "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court...." 8 U.S.C. § 1421(c). The statute further instructs that the district court shall conduct *de novo* review, making its own findings of fact and conclusions of law and conducting a hearing *de novo* on the application, if the petitioner so requests. *Id.* Section 1421(d) specifies, "A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter and not otherwise." 8 U.S.C. § 1421(d). Based on Section 1421(c), the Eleventh Circuit held that the petitioner's action was properly dismissed because she never had a hearing before an immigration officer, as required by the section before district-court jurisdiction could exist. Because, the court concluded, the exhaustion requirement was jurisdictional, "the district court was not authorized to read an exception, including one based on futility or the USCIS's actions, into that requirement." *Huang,* 468 Fed.Appx. at 935.

Section 1503(a) employs similar concepts. Like Section 1421(c)'s provision stating that a person "may seek review" of a denial of citizenship after a hearing, Section 1503(a) states that a person who has been denied a right or privilege of a national of the United States on the ground that he is not a national of the United States "may institute an action . . . declaring him to be a national of the United States . . ." in district court. 8 U.S.C.

§ 1503(a). Thus, both statutes allow for the filing of a district-court action upon fulfillment of the conditions set forth in the statute. And, like Section 1421(d)'s limitation providing that a person may be naturalized *"only* . . . in the manner and under the conditions" of the applicable subchapter, which includes Section 1421(c), *see* 8 U.S.C. § 1421(d) (emphasis added), Section 1503(a)'s language authorizes review *"only* within five years after the final administrative denial of such right or privilege...." 8 U.S.C. § 1503(a) (emphasis added). As a result, fulfillment of the exhaustion requirements provides the exclusive key to federal court under both statutes.

Nor, as Harris asserts, does footnote 5 of *Sundar v. INS,* 328 F.3d 1320 (11th Cir.2003), somehow authorize this Court to read any exceptions into Section 1503(a)'s jurisdictional exhaustion requirement. In *Sundar,* the appellant attempted to argue that *Hoang v. Comfort,* 282 F.3d 1247 (10th Cir.2002), *cert. granted, judgment vacated sub ·nom. Weber v. Phu Chan Hoang,* 538 U.S. 1010, 123 S.Ct. 1963, 155 L.Ed.2d 846 (2003), *and abrogated by Demore v. Kim,* 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), stood for the proposition that a futility exception applied to the exhaustion requirement in an alien's habeas case. But *Comfort* concerned a constitutional challenge to 8 U.S.C. § 1226(c), a provision that allows for the detention of aliens but, unlike Section 1503(a), contains no statutory exhaustion requirement. *Comfort,* 282 F.3d at 1254. Because Section 1226(c) does not include a statutory exhaustion requirement or, for that matter, provide for judicial review at all, the *Sundar* Court found that *Comfort* was not instructive in determining whether 8 U.S.C. § 1521(d)(1)'s jurisdictional exhaustion requirement applies where an

alien has challenged his removal through a habeas petition.

In discussing *Comfort*, the *Sundar* Court quoted *Comfort* for the proposition that "[w]ith regard to immigration laws, exhaustion of remedies is statutorily required only for appeals of final orders of removal." *Sundar*, 328 F.3d at 1326 n. 5 (quoting *Comfort*, 282 F.3d at 1254). The *Comfort* Court made this statement to emphasize that the statutory provision at issue in that case, § 1226(c), contained no exhaustion requirement. Neither Section 1503(a), nor, for that matter, Section 1251(d)(1)—the statute under review in *Sundar*—was at issue in *Comfort*, and the *Comfort* Court did not purport to opine on them. Moreover, *Sundar*, which, unlike *Comfort*, is binding on this Court, held that Section 1251(d)(1)'s exhaustion requirement was jurisdictional and could not be excused for futility or other reasons. Accordingly, neither *Comfort* nor *Sundar* suggests that this Court should ignore the word "final" in the text of § 1503(a) and find Harris's unexhausted claim reviewable.

Because Section 1503(a)'s exhaustion requirement is jurisdictional, failure to obtain a final administrative denial deprives the Court of jurisdiction under Section 1503(a). As a result, Count I of the Amended Complaint must be dismissed.

## B. Review of Adverse Agency Action (Count II)

■ Harris also asks this Court to review the agency action under the Administrative Procedure Act because he claims that the denial of his N–600 application was "arbitrary, capricious and contrary to law." ECF No. 19 at 8–9, ¶¶ 42–43. The APA provides,

> The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement.

5 U.S.C.A. § 703. Thus, the APA does not provide an independent basis for judicial review where such judicial review is already provided for by a different statutory provision. *See Hamby v. Janer*, 808 F.2d 1433, 1434 n. 4 (11th Cir.1987) (citing *Kansas City Power & Light Co. v. McKay*, 225 F.2d 924 (D.C.Cir.)) ("section [703] does not of itself establish jurisdiction of the federal courts over an action not otherwise cognizable by them."); *see also Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir.1998) ("it is well settled that the APA does not independently confer jurisdiction on the district courts. Rather, the APA prescribes standards for judicial review of an agency action, once jurisdiction is otherwise established." (internal citations omitted)).

■ As discussed above, 8 U.S.C. § 1503(a) provides for the judicial review of Harris's N–600 denial. Thus, APA review is not available in the instant matter because special statutory-review proceedings under § 1503(a) already exist. *See Bowen v. Massachusetts*, 487 U.S. 879, 903, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) ("When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did

not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies."); *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ("the APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action."). Harris's APA claim is therefore dismissed.

## C. Equal Protection Claim (Count III)

■■■ Harris alleges that Defendants violated his right to equal protection under the Fifth Amendment [7] because of their different and less favorable treatment of children born to unwed parents and whose naturalized United States fathers were originally from Jamaica compared to similarly situated children with naturalized United States fathers originally from other countries. ECF No. 19 at 9–10, ¶¶ 44–48. Once again, Defendants respond that the Court lacks jurisdiction to consider Harris's equal-protection challenge.

The Eleventh Circuit has noted that "[s]ome courts have indicated in dicta that constitutional challenges to the INA and INS procedures and some due process claims do not require exhaustion, because

the BIA [Board of Immigration Appeals] does not have the power to adjudicate those claims." *Sundar,* 328 F.3d at 1325 (citations omitted). But, the Eleventh Circuit has further observed, these same courts have applied the exhaustion requirement "with full force" where they have found that the claim falls within the purview of the administering agency and the administering agency can provide a remedy. *Id.* (citations omitted). In other words, courts have construed jurisdictional exhaustion requirements to apply to only those matters committed to the agency's discretion in the first place. Therefore, the question here is whether they type of equal-protection challenge that Harris brings is one within CIS's purview. Defendants suggest that it is and that Harris must first exhaust his administrative remedies before this Court may consider his equal-protection claim.

In support of their position, Defendants cite *Amaya–Artunduaga v. United States Attorney General,* 463 F.3d 1247 (11th Cir. 2006). In *Amaya–Artunduaga,* the plaintiff charged that he was denied due process of law as a result of the procedural faults in his immigration proceedings. *Id.* at 1248–49, 1251. In particular, the plain-

---

7. Harris brings his equal-protection claim under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments, but the Fourteenth Amendment applies only to state action. *See Bolling v. Sharpe,* 347 U.S. 497, 498, 74 S.Ct. 693, 98 L.Ed. 884 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.,* 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). Harris's Complaint is brought against federal agencies but not against any state agency. Similarly, a § 1983 claim is properly brought against only those who act under color of state, not federal, law. *See Spaulding v. Poitier,* 548 Fed.Appx. 587, 593–94 (11th Cir.2013) (quoting *Wilson v. Blankenship,* 163 F.3d 1284, 1288 (11th Cir.1998)) ("[A] *Bivens* case challenges the constitutionality of federal officials' conduct, while § 1983 challenges the constitutionality of

state officials' conduct."). Unlike the Fourteenth Amendment or § 1983, the Fifth Amendment does apply to actions of the federal government and, while it contains no equal–protection clause, courts construe its due-process clause as "forbid[ding] discrimination that is 'so unjustifiable as to be violative of due process.'" *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (citing *Schneider v. Rusk,* 377 U.S. 163, 168, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Bolling,* 347 U.S. at 499, 74 S.Ct. 693). "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (citing *Weinberger,* 420 U.S. at 638 n. 2, 95 S.Ct. 1225).

tiff complained that the immigration judge who presided over his hearing "color[ed] the hearing with his belief system" and treated the plaintiff with "heavy sarcasm and hostility," to the extent that the proceedings were fundamentally unfair. *Id.* at 1251.

The Eleventh Circuit concluded that exhaustion was required before the plaintiff could proceed in court. *Id.* In reaching this conclusion, the Eleventh Circuit explained, "Although we have never specifically determined which due process claims require exhaustion, other circuits have determined that procedural due process claims, as well as procedural errors argued in due process terms, must be raised before the BIA." *Id.* (citation omitted). Applying this same logic, the Eleventh Circuit found that the plaintiff's contention that he was denied a full and fair hearing before a neutral factfinder was "precisely the kind of procedural error which requires exhaustion." *Id.* Put simply, an agency's process in administering claims and applications over which it has statutory authority falls well within its purview.

In *Yang v. United States Attorney General,* 494 F.3d 1311 (11th Cir.2007) (per curiam), the Eleventh Circuit applied *Amaya–Artunduaga* to find that it lacked jurisdiction to consider an equal–protection challenge to BIA's disparate treatment of legally married couples versus traditionally married couples because the plaintiff had failed to raise the claim first before BIA. *See Yang,* 494 F.3d at 1316; *see also Sutariya v. U.S. Att'y Gen.,* 299 Fed.Appx. 949, 951 (11th Cir.2008). Although the court did not further elaborate on its reasoning, *Yang* forecloses Harris's equal-protection claim because its facts are materially indis-

tinguishable. Like the plaintiff in *Yang,* Harris asserts that his equal-protection rights have been violated by the administering agency's interpretation of the Immigration and Nationality Act.[8] Because Harris, like Yang, did not first exhaust his administrative remedies with respect to this contention, this Court lacks jurisdiction to hear the claim now.

### III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** as follows:

1. Defendants' Motion to Dismiss [ECF No. 27] is hereby **GRANTED;**

Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE;**

All pending motions are **DENIED AS MOOT:** and

The Clerk of Court shall **CLOSE** this case.

---

8. Not all circuits have reached the same conclusion as the Eleventh Circuit. *See, e.g., Colaianni v. INS,* 490 F.3d 185 (2d Cir.2007) (holding that the court had jurisdiction to consider the plaintiff's equal-protection claim under the Immigration and Nationality Act, even though the plaintiff had not first exhausted his administrative remedies).